IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 03-1037-CV-W-ODS ) |
| ALBERS MEDICAL, INC., et al., | ) ) |
| Defendants. | ) |

ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending are cross-motions for partial summary judgment. For the following reasons, Plaintiff's motion (Doc. # 75) is denied and Defendant's motion (Doc. # 81) is granted.

I. BACKGROUND

A. Introduction

Plaintiff is an insurance company that has issued two separate policies to Defendant Albers Medical, Inc. ("Albers"). One policy is a Commercial General Liability Policy ("CGL") and the other is an Umbrella Policy ("Umbrella"). Defendant has been sued by Pfizer Overseas Pharmaceuticals, Pfizer Ireland Pharmaceuticals, and Pfizer, Incorporated, (collectively "Pfizer") in a lawsuit ("the Pfizer Action") pending in this Court.[1] In summary, Pfizer alleges Albers represented a pharmaceutical product it distributed was Lipitor (a drug manufactured by Pfizer) when it was not Lipitor. This

---

[1] The case is captioned <u>Pfizer v. Albers Medical, Inc.</u>, Case No. 03-0489-CV-W-ODS.

same allegation forms the basis for suits filed by a number of other entities and individuals, the details of which are not necessary to the present discussion.

Plaintiff filed this suit against Albers and others, seeking a declaration that it is not obligated to provide a defense or indemnity in any of these lawsuits. Pending before the Court are Plaintiff's and Albers' cross-motions for summary judgment regarding Plaintiff's duty to defend Albers in the Pfizer Action.

### B. Pfizer's Claims

As will be seen in Part II(B) below, the governing legal standard requires consideration of Pfizer's claims against Albers. In the Second Amended Complaint filed in the Pfizer Action, Pfizer alleges it owns the registered trademark for Lipitor. Second Amended Complaint ("SAC"), ¶¶ 2, 19-21. Pfizer further alleges the mark qualifies as a "famous mark" as that phrase is defined in the United States Code. SAC, ¶ 29. This allegation suggests the mark has acquired widespread recognition in a particular trade, market, or geographic area. 15 U.S.C. § 1125(c)(1). Albers is alleged to have sold products labeled as Lipitor that were, in fact, not Lipitor, thereby damaging Pfizer's goodwill and reputation and diluting the value of the trademark. SAC, ¶¶ 3-4, 30-31, 41-48.

Only two of the Pfizer Action's six counts need to be addressed in detail. Count I asserts claims for trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114(1) against several parties, including Albers. Paragraph 51 alleges two discrete facts: (1) that the defendants packaged, distributed and sold items identified as Lipitor that were not Lipitor and (2) those efforts were continuing at the time the Pfizer Action was filed. Pfizer further alleges the infringement was "willful and deliberate [and] occurred with defendants' knowledge or willful disregard of the counterfeit nature of the products at issue . . . ." SAC, ¶ 52. These allegations are made (as paragraph 53 confirms) because if they are proven Pfizer would be entitled to greater damages than are otherwise available. See 15 U.S.C. §§ 1114(1), 1125(c)(2) (both requiring a degree of intent or scienter before allowing certain categories of damages). Count II asserts a

2

claim for falsely designating the origin of the drugs in violation of 15 U.S.C. § 1125(a). Generally speaking, Pfizer alleges Albers and others utilized the Lipitor and Pfizer names in a manner that created the false impression the drugs originated from Pfizer. SAC, ¶ 56. Like Count I (and for the same reasons as in Count I), Count II alleges these actions were done willfully and deliberately. SAC, ¶ 57.

### C. The Policy Language

As relevant to this case, the CGL and the Umbrella contain provisions that are virtually identical. The quoted language used in this Order is found in the CGL.

Coverage B[2] of the CGL provides coverage for "personal and advertising injury," which is defined to cover seven discrete activities or claims. As relevant to this suit, these definitions include "the use of another's advertising idea in your 'advertisement'" and "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" The term "advertisement" is defined to mean "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

Coverage B also contains a series of exclusions, including (as relevant to Plaintiff's arguments) injury

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

\* \* \*

(4) Arising out of a criminal act committed by or at the direction of any insured;
\* \* \*

---

[2]Albers does not contend Coverage A applies in this case.

3

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

## II. DISCUSSION

### A. Summary Judgment Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Governing Legal Principles

An insurer's obligation to defend its insured is broader than its duty to indemnify its insured. E.g., McCormack Baron Mgt. Servs., Inc. v. American Guarantee & Liability Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999) (en banc). "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependant on the probable liability to pay based on the facts

4

ascertained through trial. The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." Id. (quotation omitted). "[T]he duty to defend is triggered if there are facts that could potentially bring the underlying claim within coverage. Furthermore, any uncertainty as to the policy's coverage should be decided in favor of the insured." Liberty Mutual Ins. Co. v. FAG Bearings Corp., 153 F.3d 919, 924 (8th Cir. 1998); see also McCormack, 989 S.W.2d at 170-71 ("If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend."). Finally, the insurer is obligated to defend all claims even if only one claim in the suit is arguably covered. E.g., Valentine-Radford, Inc. v. American Motorists Ins. Co., 990 S.W.2d 47, 52 (Mo. Ct. App. 1999) (citing Butters v. City of Independence, 513 S.W.2d 418, 424-25 (Mo. 1974)).

### C. Analysis

Plaintiff contends there is no potential for coverage, and hence no duty to defend, for three reasons: (1) Pfizer does not allege it was damaged by an "advertisement," (2) Pfizer does not allege it suffered an "advertising injury," and (3) Pfizer's pleadings confirm that certain policy exclusions will exclude coverage.

### 1. "Advertisement"

One of the requirements for having an "advertising injury" is the existence of an "advertisement." Albers (among others) is alleged to have communicated a desire and ability to sell Lipitor to "consumers and the trade." SAC, ¶ 30. The Pfizer Action also alleges those communications will cause consumers and purchasers to be confused, mistaken, or deceived about the difference between "real" Lipitor and the products in question. SAC, ¶ 42. There is potential coverage because Albers allegedly communicated something about its product to members of the public for the purpose of attracting customers. Albers also allegedly published notice to a specific market

5

segment (i.e., those in the distribution chain for drugs, such as retail drug stores) that it had Lipitor for sale.

Plaintiff relies on a decision from the Missouri Court of Appeals for the proposition that an "advertising injury" arises only "from the insured's widespread distribution of promotional material to the public at large." Plaintiff's Suggestions in Support at 10. The Court rejects this argument for three reasons. First, this is not a fair interpretation of the opinion. The court of appeals explained that there was no "evidence that *prospective customers* or the public generally" were aware of the insured's actions. American States Ins. Co. v. Vortherms, 5 S.W.3d 538, 544 (Mo. Ct. App. 1999) (emphasis supplied). The Pfizer Action alleges Albers communicated to its customers it was selling Lipitor. Second, as noted earlier, Pfizer's allegations are sufficiently broad to allow an interpretation that Albers communicated directly to the public at large. Third, unlike the policy in Vortherms, the policy in this case specifies that an "advertisement" need not be distributed to the public at large; it is sufficient if the announcement is communicated to a "specific market segment." This would include the retail establishments to which Albers allegedly communicated its ability to supply Lipitor.

## 2. "Advertising Injury"

Plaintiff next contends that even if Pfizer's claims arise from an "advertisement," Pfizer has not alleged it suffered an "advertising injury" because the Pfizer Action does not assert a claim for (1) infringement of copyright, trade dress, or slogan or (2) use of an advertising idea; instead, it asserts claims predicated on infringement of Pfizer's trademarks. Plaintiff is correct on the former point, but the cases upon which it relies for the latter point are distinguishable.

The Eighth Circuit addressed similar issues in Callas Enterprises, Inc. v. Travelers Indemnity Co. of America, 193 F.3d 952 (8th Cir. 1999). The Court of Appeals initially concluded the "breach of contract" exclusion (which is not applicable in this case) barred coverage. 193 F.3d at 955-56. Acknowledging this holding was sufficient to resolve the case, the appellate court nonetheless considered three other aspects of

6

the policy that had not been addressed by the trial court, two of which are relevant to this case.[3]

First, the policy defined an "advertising injury" to include "[i]nfringement of copyright, title, or slogan;" like the case at bar, this aspect of the definition did not mention trademark. Trademarks are not copyrights, titles, or slogans, so there was no coverage by virtue of that aspect of the definition. Id. at 956-57. Similarly, the Court must conclude trademarks are not copyrights, trade dress, or slogans (the phrase used in the present policy), so that aspect of the definition in Albers' policy is not met.

Second, the policy in Callas defined an "advertising injury" to include "[m]isappropriation of advertising ideas or style of doing business." The Eighth Circuit relied on a Sixth Circuit decision for the proposition that this phrase "could not be so broadly construed as to include trademark or trade dress infringement." Id. at 956 (citing Advance Watch Co. v. Kemper Nat'l Ins. Co., 99 F.3d 795, 802-03 (6th Cir. 1996)). The policy in Advance Watch, like the policy in Callas, defined an advertising injury to include "[m]isappropriation of advertising ideas or style of doing business." 99 F.3d at 798. The Sixth Circuit rejected the district court's holding that the term "'misappropriation' refers broadly to a category of wrongful conduct which includes trademark and trade dress infringement." Id. at 800. Instead, the court adopted a limited interpretation of the term, holding it "refer[s] to the unauthorized taking or use of interests other than those which are eligible for protection under statutory or common-law trademark law." Id. at 802. This holding rested on the understanding that "misappropriation" is a term of art intended to describe certain types of legal claims. Id; see also State Auto Property & Casualty Ins. Co. v. Travelers Indemnity Co. of Am., 343 F.3d 249, 255 (4th Cir. 2003) ("The common law tort of misappropriation provides a

---

[3]The other issue discussed in Callas involved the policy's coverage for a defamation claim.

7

remedy for the appropriation of some item of creation of the plaintiff which is not protected by trademark law." (quotation omitted)).[4]

The difficulty is obvious: the term "misappropriation" is not present in Albers' policy. The policy provides coverage if another's advertising idea is "used." "Used" does not have the same technical, defined meaning in the law as "misappropriation," so the rationale of Callas (which incorporates the rationale of Advance Watch) does not apply to the case at bar.

"Use" is a common and ordinary term, capable of ready discernment. It's reach is obviously much broader than that afforded to the legal definition of "misappropriation." The more difficult question is: does the Pfizer Action charge Albers with using Pfizer's "advertising idea?" An "'advertising idea' generally encompasses 'an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage.'" American Simmental Ass'n v. Coregis Ins. Co., 282 F.3d 582, 587 (8th Cir. 2002) (quoting Advance Watch, 99 F.3d at 801); see also Vortherms, 5 S.W.3d at 543.[5] Keeping in mind the standards espoused in Part II(B) of this Order, this definition is broad enough to include the use of the name Lipitor in promotional literature, particularly in light of the well-developed meaning ascribed to the term (as alleged in the SAC). Admittedly, this is a somewhat unusual case. Nonetheless, by labeling a substance – regardless of its efficacy or actual chemical composition[6] – as Lipitor when the substance was not really the product produced by

---

[4]Advance Watch appears to represent the minority view. See State Auto Property, 343 F.3d at ("[T]he majority of those courts which have interpreted the term 'misappropriation,' in this context, conclude . . . that refers to wrongful acquisition generally rather than to common law misappropriations only."). One might contend Callas' adoption of Advance Watch was dicta because it was not necessary to the holding, but that is a determination to be made by the Court of Appeals, not this Court.

[5]It is true the Pfizer Action's claims are predicated on specific federal causes of action, but this does not preclude a determination the substance of the claims alleges an advertising injury. Unlike the other aspect of the policy's definition, there is nothing limiting "use of an advertising idea" to a laundry list of theories or causes of action.

[6]The Pfizer Action allows for the possibility that the product Albers sold was chemically indistinct from Lipitor.

8

Pfizer under that name, Albers allegedly used Pfizer's idea for calling public/consumer attention to its product. In addition (and contrary to Plaintiff's contention), some of Pfizer's alleged damages are connected to or arise from Albers' use of that advertising idea.

### 3. Exclusions

Plaintiff posits two distinct theories premised on policy exclusions it alleges are applicable in this case. The first theory focuses on various remedies sought in the Pfizer Action and argues those remedies are not covered by the policy. There is no need to consider the availability of *all* remedies because there is no doubt that at least one remedy is covered. Thus, as noted in Section II(B), Plaintiff is obligated to defend the entire suit.

Plaintiff's second theory posits the Pfizer Action "alleges only intentional wrongdoing." It is true the Pfizer Action alleges intentional wrongdoing; it is not true that it alleges *only* intentional wrongdoing. Pfizer's claims do not depend upon a showing of intentional wrongdoing. Stated another way, intent is not an element Pfizer must prove in order to prevail in the Pfizer Action. A showing of intentional wrongdoing may be necessary to entitle Pfizer to certain types of relief, but it is not a necessary component of its claim.

## D. Epilogue

The Court is not holding Plaintiff is obligated to provide a defense indefinitely. All that can be said is that the present record demonstrates at least one of Pfizer's claims is potentially covered by the insurance policy. This determination has been made after construing the policy in favor of coverage, as required by Missouri law. While events during trial in the Pfizer Action cannot affect Plaintiff's defense obligation, McCormack, 989 S.W.2d at 170, other developments such as a determination of the coverage issue (which is not implicated by this ruling) or a conclusion to the criminal charges filed

9

against Albers might alter the landscape in manner that terminates Plaintiff's defense obligations.

### III.  CONCLUSION

For these reasons, Plaintiff's motion for partial summary judgment is denied and Albers' motion for partial summary judgment is granted.

IT IS SO ORDERED.

                                                /s/ Ortrie D. Smith
                                                ORTRIE D. SMITH, JUDGE
DATE: September 22, 2005                UNITED STATES DISTRICT COURT